**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cr-000127-4** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **[4] MYKYTA STRUKOV** | ) | |

<u>**MEMORANDUM**</u>

Before the court is defendant Mykyta Strukov's Motion to Dismiss or Cure Indictment (Doc. No. 68) supported by a Memorandum of Law (Doc. No. 69), in which Strukov argues that Counts One and Two of the Indictment must be dismissed as to him. The government has filed a Response in opposition to the motion (Doc. No. 79), and the defendant has filed a Reply (Doc. No. 85).[1] For the reasons set forth herein, the motion will be denied, but without prejudice to the defendant's ability to request special jury instructions and a carefully tailored verdict form to address the problems of duplicity and multiplicity identified herein.

**I.      BACKGROUND**

On August 28, 2023, the government filed a thirteen-count Indictment (plus a forfeiture allegation) charging four defendants, including Mykyta Strukov. Only Counts One and Two concern all four of the defendants, and they are the only two counts against Strukov. Count One consists of a single paragraph that states:

---

[1] The defendant actually filed two Reply briefs, one five pages long (Doc. No. 82) and the other, with the court's leave, nine pages long (Doc. No. 85). The latter supersedes the former.

<u>COUNT ONE</u>

(Weapons Trafficking Conspiracy—18 U.S.C. § 933)

   1.  Beginning not later than in or about April 2023 . . . and continuing through at least on or about August 9, 2023, in the Middle District of Tennessee and elsewhere, the defendants **[1] ARNOLD JUNIOR MARKS, a/k/a "AJ," [2] KAMAL FAKHRY, [3] CASSETTY CARVER,** and **[4] MYKYTA STRUKOV** . . . did knowingly: (a) ship, transport, transfer, cause to be transported, and otherwise dispose of one or more firearms to another person, in and affecting interstate commerce, knowing and having reasonable cause to believe that the use, carrying, and possession of a firearm by the recipient would constitute a felony; and (b) receive from another person one or more firearms, in and affecting interstate or foreign commerce, knowing or having reasonable cause to believe that such receipt would constitute a felony, as defined in section 932(a), and did attempt to and conspire to do the same.

   In violation of Title 18, United States Code, Sections 933(a) and (b).

(Doc. No. 3, at 1–2.)

   Count Two of the Indictment charges a conspiracy to commit offenses against the United States, in violation of 18 U.S.C. § 371. Its allegations cover nine pages that will not be reproduced in their entirety here, but relatively few of its paragraphs concern Strukov. Paragraph 2 states that, beginning in or about April 2023 and continuing through August 9, 2023, the four defendants "did knowingly combine, conspire, confederate, and agree with each other and others known and unknown" to engage in criminal offenses against the United States, including (a) "knowingly engaging in the business of dealing in firearms without a license," in violation of 18 U.S.C. §§ 922(a)(1)(A) and 923; and (b) transferring firearms to another person while knowing or having reasonable cause to believe that the possession of the firearm by the recipient would constitute a felony, in violation of 18 U.S.C. § 933.[2]

---

  [2] Count Two of the Indictment also charges all four co-defendants with conspiracy to possess a firearm by a previously convicted felon and to engage in the transfer and possession of a machinegun. (Doc. No. 3 ¶ 2(b)–(c).)

Under the "Manner and Means" section of Count Two, the Indictment alleges that the four defendants "would purchase firearms with the intent of reselling firearms" to other individuals, including a confidential informant ("CI"), would "offer[] to sell firearms to individuals" in this judicial district, and, despite not having a license to sell firearms, "would then sell these firearms to individuals, some of whom were felons." (Doc. No. 3 ¶¶ 5–7.)

The "Overt Acts" alleged in Count Two cover forty-five enumerated paragraphs, only six of which mention or tangentially involve Strukov:

DD.     On or about June 22, 2023, **[1] ARNOLD JUNIOR MARKS, a/k/a "AJ"** met with **[2] KAMAL FAKHRY**, **[4] MYKYTA STRUKOV**, and an unindicted co-conspirator to obtain additional firearms to sell to the CI;

EE.     On or about June 22, 2023, **[1] ARNOLD JUNIOR MARKS, a/k/a "AJ"** sold the CI [four different pistols, including one that was "modified for automatic fire"] for $4,000;[3]

. . . .

LL.     On or about July 10, 2023, **[1] ARNOLD JUNIOR MARKS, a/k/a "AJ"** met with **[2] KAMAL FAKHRY** and **[4] MYKYTA STRUKOV** at the Rains Market & Eatery in Nashville before **[1] ARNOLD JUNIOR MARKS, a/k/a "AJ"** obtained the money from the CI to purchase firearms;

MM.     On or about July 10, 2023, **[1] ARNOLD JUNIOR MARKS, a/k/a "AJ"** met with the CI and the CI provided **[1] ARNOLD JUNIOR MARKS, a/k/a "AJ"** with $8,450 for firearms;

NN.     On or about July 10, 2023, immediately after obtaining money from the CI, **[1] ARNOLD JUNIOR MARKS, a/k/a "AJ"** met with **[4] MYKYTA STRUKOV** at the Rains Market & Eatery in Nashville where **[4] MYKYTA STRUKOV** provided **[1] ARNOLD JUNIOR MARKS, a/k/a "AJ"** with three bags containing firearms in exchange for the currency previously obtained from the CI;

---

[3] The court observes that the "met with . . . to obtain" language in ¶ 8(DD) is somewhat ambiguous insofar as meeting with someone for the purpose of doing something does not necessarily imply that that objective was achieved. Read in conjunction with ¶ 8(EE), however, ¶ 8(DD) reasonably implies that Marks obtained from Fakhry and Strukov the firearms that he sold to the CI later the same day, as alleged in ¶ 8(EE).

OO.    On or about July 10, 2023, **[1] ARNOLD JUNIOR MARKS, a/k/a "AJ** sold the CI [four pistols and a rifle] . . . .

(Doc. No. 3 ¶¶ 8(DD), 8(EE), 8(LL)–8(OO).)[4]

Strukov seeks dismissal of both Indictment counts against him. He argues that Count One should be dismissed as insufficient or, alternatively, that it must be reformulated to cure duplicity. He also argues that, insofar as it charges a conspiracy in violation of § 933, it is multiplicitous. (*See* Doc. No. 69, at 5 n.1.) He seeks dismissal of Count Two on the grounds that (1) it does not adequately allege that he knowingly joined the conspiracy to effectuate its purpose and (2) the statutes criminalizing the unlicensed "dealing" of firearms fail to provide him fair warning that his conduct would be considered illegal and (3) are unconstitutionally vague.

The government responds that the defendant's objection to the Indictment amounts to a mere factual dispute, that the Indictment is valid on its face, and that no court to date has found the relevant statutes to be unconstitutionally vague.

## II.    COUNT ONE

As indicated above, Strukov argues, first, that Count One should be dismissed as legally insufficient, as it consists of a "mere recitation of 18 U.S.C. § 933 without the requisite 'statement of facts and circumstances.'" (*See* Doc. No. 69, at 5 (quoting *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001)).) Alternatively, he contends that Count One must be reformulated to cure duplicity and multiplicity. More specifically, he contends that Count One is duplicitous, because subsections (a)(1) and (a)(2) proscribe two substantively different offenses requiring

---

[4] The remaining allegations under ¶ 8 primarily detail overt acts by defendant Marks. The other counts in the Indictment charge only defendant Marks with knowingly possessing various firearms, despite knowing that he had previously been convicted of a felony (Counts Three through Eight and Eleven through Thirteen), knowingly possessing a machinegun (Count Nine), and knowingly possessing a firearm (the machinegun) not registered to him (Count Ten).

different proof and that subsection (a)(3), which proscribes attempting and conspiring to violate (a)(1) or (a)(2), creates two additional offenses. Strukov also contends that the conspiracy charge in Count One is multiplicitous, insofar as it charges the same conspiracy to violate § 933 that is charged in Count Two. The government responds by arguing only that Count One is sufficient.

### A.     Legal Standards

#### *1.     Sufficiency of the Indictment*

Rule 7 of the Federal Rules of Criminal Procedure states that an indictment must include a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A count in the indictment "may incorporate by reference an allegation made in another count," but the indictment must provide, for each count, the "official or customary citation of the statute, rule, regulation or other provision of law that he defendant is alleged to have violated." *Id.* Under Rule 8, when there are multiple defendants in one case, they "may be charged in one or more counts together or separately," so long as "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b)

The Sixth Circuit has generally recognized that an indictment is sufficiently pleaded, both under these rules and under the Constitution,[5] if it, "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

---

[5] The Notice Clause of the Sixth Amendment requires that a criminal defendant "be informed of the nature and cause of the accusation against him." *Landham*, 251 F.3d at 1079 n.3 (quoting U.S. Const. amend. VI). In addition, "the Indictment Clause of the Fifth Amendment requires that a defendant be charged with only those charges brought before the grand jury." *Id.* (citing U.S. Const. amend. V).

*United States v. Howard*, 947 F.3d 936, 942 (6th Cir. 2020) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). As the Supreme Court further explained in *Hamling*:

> It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished. Undoubtedly the language of the statute may be used in the general description of an offence, but it *must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged*.

*Hamling*, 418 U.S. at 117–18 (internal citations and quotation marks omitted) (emphasis added); *see also Landham*, 251 F.3d at 1079 ("[I]t is axiomatic that, '[t]o be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime.'" (quoting *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992)).

Courts evaluating a motion to dismiss an indictment do not evaluate the evidence upon which the indictment is based. *Landham*, 251 F.3d at 1080 (citing, among others, *Costello v. United States*, 350 U.S. 359, 362–63 (1956)). However, "[w]hether the elements of the offense are adequately alleged in the indictment is a legal question subject to de novo review." *Id.* (citing *Superior Growers*, 982 F.2d at 177). An indictment is to be construed liberally in favor of its sufficiency. *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

### 2. *Duplicity and Multiplicity*

A "duplicitous" indictment is one that charges more than one offense within a single count. *See, e.g.*, *United States v. Anderson*, 605 F.3d 404, 414 (6th Cir. 2010) (citing *United States v. Washington*, 127 F.3d 510, 513 (6th Cir 1997)). "The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both." *Id.* (quoting *Washington*, 127

F.3d at 513). In other words, where a count is duplicitous, a guilty verdict on that count "will not reveal whether the jury found the defendant guilty of one crime and not guilty of the others, or guilty of all." *Washington*, 127 F.3d at 513. A "multiplicitous" indictment, on the other hand, charges "a single offense in more than one count in an indictment." *United States v. Myers*, 854 F.3d 341, 355 (6th Cir. 2017) (quoting *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008)). A multiplicitous indictment is constitutionally infirm, insofar as it could result in a defendant's "being punished twice for the same crime." *Id.* (quoting *Swafford*, 512 F.3d at 844).

"The yardstick in determining whether there is duplicity or multiplicity is whether one offense or separate offenses are charged and . . . this is a difficult and subtle question." *United States v. Davis*, 306 F.3d 398, 415–16 (6th Cir. 2002) (citing 2 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 142, at 17 (3d ed. 1999)). For purposes of both duplicity and multiplicity, the "test announced most often in the cases is that offenses are separate if each requires proof of an additional fact that the other does not." *Id.* at 416 (addressing question of duplicity); *see also Myers*, 854 F.3d at 355 ("To determine whether charges are multiplicitous, we generally analyze, under *Blockburger v. United States*, 284 U.S. 299 (1932), whether each charge requires proof of a fact that the other charge does not; if each charge does, then the charges accuse different crimes and are therefore not multiplicitous.").

### B.    Sufficiency

Strukov seeks dismissal of Count One on the basis that, although it recites practically verbatim the text of the statute, it incorporates no facts to establish a *prima facie* showing that those elements have been met. The government responds by articulating a number of facts not in evidence and not alleged in the Indictment, including facts about what happened when police officers executed a search warrant at Strukov's residence and when they interviewed Strukov, and it articulates the way in which it will ask the court to instruct the jury as to Count One. (Doc. No.

79, at 2–4, 6–8.) It asserts that Count One charges all of the defendants with violating each provision of 18 U.S.C. § 933 and that the charge "sufficiently outlines each offense [with] which the Defendant is charged as it contains the elements of the offense charged and fairly informs a defendant of the charges against which he must defend." (Doc. No. 79, at 8.) And it asserts that Count One enables each defendant to "unequivocally claim that an acquittal or conviction would bar any future prosecutions for any offenses under 18 U.S.C. § 933 related to the charged time period," April 2023 through August 9, 2023. (*Id.* at 9.) It asserts that the law requires nothing more and that U.S. Attorney's Offices across the country have charged the offense consistently with the way it was done here.

Count One is undoubtedly poorly drafted, as addressed below. However, when ruling on a pretrial motion to dismiss, the court must view the indictment "as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications." *McAuliffe*, 490 F.3d at 530 (citing *United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996) (en banc)). Further, the "indictment is to be construed liberally in favor of its sufficiency." *Id.* at 531 (citing *Davis*, 306 F.3d at 411). In addition, as set forth above, Rule 7 of the Federal Rules of Criminal Procedure provides that a count in the indictment "may incorporate by reference an allegation made in another count." Fed. R. Crim. P. 7(c)(1); *see also United States v. Salisbury*, 983 F.2d 1369, 1374 (6th Cir. 1993) ("[A] reviewing court may consider the overt acts portion of one count in judging the sufficiency of an indictment.").

Applying these principles to the Indictment in this case, the court must presume that the facts alleged under Count Two were intended to support Count One as well. Viewed thus, Count One is not insufficient for failing to incorporate "a statement of the facts and circumstances as will

inform the accused of the specific offence . . . with which he is charged." *Hamling*, 418 U.S. at 117–18. Count One of the Indictment is not subject to dismissal for insufficiency.

## C.    Duplicity

The defendant also maintains that Count One charging a violation of § 933(a) is defective insofar as it is duplicitous, charging more than one criminal offense within a single count. The government does not respond to this argument.

The statute at issue reads as follow:

(a) In general.--It shall be unlawful for any person to--

> (1) ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony (as defined in section 932(a));[6]

> (2) receive from another person any firearm in or otherwise affecting interstate or foreign commerce, if the recipient knows or has reasonable cause to believe that such receipt would constitute a felony; or

> (3) attempt or conspire to commit the conduct described in paragraph (1) or (2).

18 U.S.C. § 933(a).[7]

With respect to duplicity, as set forth above, Count One charges apparently all of the defendants with violating subsections (a)(1) and (a)(2) by *both* (1) transferring a firearm to another person while knowing (or having reasonable cause to believe) that the use or possession of a firearm by such person would be a felony under 18 U.S.C. § 932 and (2) receiving a firearm while knowing that the defendant's own receipt of the firearm would constitute a felony. Further, in

---

[6] Section 932 defines "felony" as "any offense under Federal or State law punishable by imprisonment for a term exceeding 1 year." 18 U.S.C. § 932(a)(3).

[7] Subsection (b) prescribes the maximum penalty for a violation of subsection (a).

addition to the substantive offense(s), Count One also charges the defendants with "attempt[ing] to and conspir[ing] to do the same." (Doc. No. 3 ¶ 1.)

It is generally accepted that a substantive crime and an attempt to commit that crime may be charged in a single count of an indictment, since "attempt" is typically a lesser-included offense of the completed substantive offense. *See, e.g.*, *United States v. Ramamoorthy*, 949 F.3d 955, 960 (6th Cir. 2020) (finding that an indictment charging sexual abuse and attempted sexual abuse in one count was not duplicitous, "because [the] elements [of attempted sex abuse] form a subset of the elements of completed sexual abuse" (citing *United States v. Bradley*, 917 F.3d 493, 508 (6th Cir. 2019)). Insofar as the defendant is arguing that the "attempt" charge is duplicitous of the substantive charge, he is incorrect.

At the same time, however, *conspiracy* requires wholly different elements from either a substantive offense or attempt. *See, e.g.*, *United States v. Barrett*, 933 F.2d 355, 361 (6th Cir. 1991) ("Conspiracy and attempt are separate offenses, each requiring proof of an element not required by the other. No merger of offenses occurs in such a situation."); *United States v. Marin*, 654 F. Supp. 3d 632, 633 (E.D. Mich. 2023) ("[T]he elements of conspiracy require proof of a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal. Attempt, on the other hand, requires the specific intent to commit a crime . . . and a substantial step towards the commission of that crime." (citation and internal quotation marks omitted). *See also United States v. Martin*, 516 F. App'x 433, 445 (6th Cir. 2013) ("A substantive crime and a conspiracy to commit that crime are not the 'same offense' for double jeopardy purposes; each requires proof of an element not required by the other." (citing *Barrett*, 933 F.2d at 361)). It is, therefore, abundantly clear that conspiracy to engage in a crime is a completely separate offense from a substantive crime or an attempted substantive crime and,

therefore, that Count One is duplicitous, insofar as it charges conspiracy along with the underlying substantive charge and attempt charge.

Strukov also maintains that Count One is duplicitous because subsections (a)(1) and (a)(2) of § 933 describe different substantive offenses. No circuit court of appeals has addressed this issue, § 933 having been passed into law less than two years ago as part of the Bipartisan Safer Communities Act, Pub. L. No. 117-159, 136 Stat. 1313 (June 25, 2022). And the caselaw distinguishing between subparts of statutes that provide different means of committing the same offense, as opposed to entirely different offenses, is, to say the least, equivocal.

Generally, as noted above, duplicity occurs when two or more crimes are alleged in one count, but "[i]t is not duplicitous to allege in one count that multiple means have been used to commit a single offense." *United States v. Damrah*, 412 F.3d 618,622 (6th Cir. 2005). Thus, for example, in *United States v. Giampietro*, 475 F. Supp. 3d 779, 785 (M.D. Tenn. 2020), another judge of this court found that an indictment was not duplicitous where it alleged, in Count Two, that the defendant "used multiple means to obstruct an FBI investigation by altering or destroying social media accounts, text messages, chat conversations, and other electronic communications" and, similarly, alleged in Count Three that the defendant "used multiple means to obstruct a grand jury investigation by concealing, altering, or destroying contact information, text messages, electronic messages, and a cellphone." In other words, in that case, a single defendant was alleged to have engaged in ongoing conduct that collectively constituted the means of the alleged criminal offenses of obstructing an FBI investigation and obstructing a grand jury investigation.

The Sixth Circuit was presented with a different situation in *United States v. Combs*, 369 F.3d 925 (6th Cir. 2004), where it decided that 18 U.S.C. § 924(c)(1)(A) proscribes two different offenses. Section 924(c) states in relevant part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime[,] [be sentenced as provided in subsections (i)–(iii)].

18 U.S.C. § 924(c)(1)(A). In *Combs*, the defendant challenged his conviction under § 924, and the court found the sufficiency of the indictment turned on the "issue of whether or not § 924(c) criminalizes two distinct offenses." *Combs*, 369 F.3d at 930. The court scrutinized the statute and found that it did, based upon (1) the plain meaning of the statutory text, (2) the legislative history, and (3) the fact that each of the two offenses proscribed by the statute "requires proof of an additional fact that the other does not." *Id.* at 932.

Regarding the statutory text, the court noted that the

> two prongs of the statute are separated by the disjunctive "or," which, according to the precepts of statutory construction, suggests the separate prongs must have different meanings.

*Combs*, 369 F.3d at 931 (citations omitted).

The legislative history bolstered this conclusion, insofar as Congress apparently "intended 'in furtherance of' to create a different standard of conduct than did the 'during and in relation to' language." *Id.* at 932. The court understood that, by "adding possession as a prohibited act, and requiring a higher standard of participation to charge a defendant with the act, . . . Congress . . . delineated a new offense within the same statute." *Id.*

And finally, with regard to the different proof, while the court conceded that "the differences between the standards are subtle and somewhat elusive," it nonetheless held that "in furtherance of" differs from "during and in relation to," insofar as it "requires the government to prove a defendant used the firearm with greater participation in the commission of the crime or

that the firearm's presence in the vicinity of the crime was something more than mere chance or coincidence." *Id.* at 933 (internal quotation marks and citations omitted).

In *Damrah*, the defendant argued similarly that the single-count indictment charging him with violating 18 U.S.C. § 1425(a) and (b) was duplicitous, because subsections (a) and (b) were "separate offenses, rather than different means of committing the same offense, and as such must be charged in separate counts in an indictment." *Damrah*, 412 F.3d at 622 (citing Fed. R. Crim. P. 8(a)). That statute provides:

> (a) Whoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship; or
>
> (b) Whoever, whether for himself or another person not entitled thereto, knowingly issues, procures or obtains or applies for or otherwise attempts to procure or obtain naturalization, or citizenship, or a declaration of intention to become a citizen, or a certificate of arrival or any certificate or evidence of nationalization or citizenship, documentary or otherwise, or duplicates or copies of any of the foregoing—
>
> Shall be fined under this title or imprisoned not more than 25 years . . . .

18 U.S.C. § 1425.

The court stated, "[i]n determining whether there is duplicity or multiplicity [in an indictment] the decisive criteria are legislative intent and separate proof." *Id.* (quoting *United States v. Duncan*, 850 F.2d 1104, 1108 n.4 (6th Cir. 1988), *overruled on other grounds by Schad v. Arizona*, 501 U.S. 624 (1991)). Without actually analyzing those criteria as applied to § 1425, the court found that this statute (unlike 18 U.S.C. § 924(c)(1)(A)) "provides two means by which unlawful naturalization can be obtained." *Id.* The entirety of its analysis consisted of this assertion:

> Rather than defining two crimes, § 1425(a) and (b) provide two means by which unlawful naturalization can be obtained. Under the statute, one can procure naturalization "contrary to law" (§ 1425(a)) or naturalization to which one is not entitled (§ 1425(b)). It is not duplicitous to allege in one count that multiple means have been used to commit a single offense.

*Id.* at 622–23 (citations omitted).[8]

In *Richardson*, the Supreme Court distinguished between elements of a crime and the factual means of establishing those elements. It explained that federal crimes are "made up of factual elements," and "a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element" of the particular crime charged. *Richardson*, 526 U.S. at 817. On the other hand, "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id.* The Court provided the following example:

> [w]here . . . an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.

*Id.* Applying this definition to the statute before it, the Court concluded that the term "violation" (in "series of violations") as used in the statute forbidding any "person" from "engag[ing] in a continuing criminal enterprise," 21 U.S.C. § 848(a), was an element of the offense, rather than a means, such that the statute "requires jury unanimity in respect to each individual 'violation.'" *Id.* at 824. In *Schad*, to the contrary, the Court affirmed a conviction for first-degree murder under Arizona law, which defined the crime as requiring that the defendant commit murder "either with premeditation or in the course of committing a robbery," without requiring unanimity as to which of the two means was used to commit the first-degree murder. *Schad*, 501 U.S. at 630–31.

---

[8] The court went on to state that, although it "[did] not believe that the indictment was duplicitous," any duplicity was harmless, because the district court cured it by providing a "special unanimity instruction and a special jury form." *Damrah*, 412 F.3d at 623.

Attempting to derive some guidance from this precedent to apply to the statute at issue, this court finds, based on the considerations identified in *Combs* that § 933(a)(1) and (a)(2) describe two distinct offenses. First, although the court has located little relevant legislative history, the available sources refer to the statute simply as a new and necessary provision to prohibit the "trafficking of firearms," without identifying whether Congress intended to create different trafficking offenses or different means of committing trafficking. *See, e.g.*, 168 Cong. Rec. E687-02, *E687, 2022 WL 2388527 (July 1, 2022). The text of the statute itself, however, strongly suggests that the statute creates two offenses. Clauses (a)(1) and (a)(2) are implicitly joined by the disjunctive "or" that is placed between (a)(2) and (a)(3), suggesting, as in the case of 18 U.S.C. § 924(c), that, "according to the precepts of statutory construction, . . . the separate prongs must have different meanings." *Combs*, 369 F.3d at 931.

More importantly, the two subclauses of the statute require very different acts and different proof. A violation of § 933(a)(1) requires proof that (1) the defendant *transferred* a firearm by any number of different means—shipping, transporting, causing to be transported, transferring or "otherwise dispos[ing]"—(2) to a third person (3) known by the transferor to be a prohibited person under § 932(a). Subsection (a)(2) requires proof that (1) the defendant *received* a firearm (2) while knowing that *he* is a prohibited person. For (a)(1), the defendant's transfer of a firearm and his knowledge of the recipient's status are the key elements of the crime, while the actual status of the recipient and his *mens rea* are irrelevant. Conversely, to commit a violation of § 933(a)(2), a person who knows himself to be a prohibited person need only acquire a firearm from any source— apparently including even a lawfully licensed gun dealership through a salesperson who reasonably believes that the recipient is not a prohibited person. Both the *mens rea* and the status of the recipient are key, while neither the status nor the *mens rea* of the transferor is relevant to

this offense. In other words, "each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The two clauses are so entirely different that the court finds it difficult to see how any court could conclude that they are simply different means of committing the single offense of firearms trafficking.

In sum, the court finds that Count One is duplicitous because violations of § 933(a)(1), (a)(2), and the conspiracy prohibition in (a)(3) constitute three distinct offenses.

### D. Multiplicity

The defendant also contends that the conspiracy charged in Count One makes that count multiplicitous with Count Two, insofar as both charge a conspiracy to violate § 933. To determine whether two conspiracies actually constitute a single conspiracy (and, thus, a single offense in multiple counts of the indictment), the Sixth Circuit has "developed a five-factor 'totality of the circumstances' test" to assist courts "in answering the ultimate question: 'whether the evidence shows one agreement or more than one agreement.'" *United States v. Kennedy*, 743 F. App'x 649, 653 (6th Cir. 2018). These factors include:

> 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place.

*Id.* (quoting *United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir. 1983)).

Here, the defendant simply asserts that the multiplicity is clear, since "18 U.S.C. § 933 is one of the four target offenses underlying the alleged conspiracy in Count Two," and he interprets this overlap to suggest that the government likely did not intend to pursue Count One as a conspiracy charge. (Doc. No. 69, at 5 n.1) The government's Response does not address the defendant's multiplicity argument, but it indicates that, indeed, it intends to pursue charges for

substantive violations of § 933(a)(1) and (a)(2), as well as attempt to commit both those charges and conspiracy to commit § 933(a)(1). (*See* Doc. No. 79, at 6–9.)

Regardless, applying the *Sinito* factors, it is clear that the conspiracy charged in Count One is completely subsumed by the § 371 conspiracy alleged in Count Two: (1) The time frame is identical ("in or about April 2023 . . . and continuing through at least on or about August 9, 2023" (Doc. No. 3 ¶¶ 1, 2); (2) the same four defendants are charged as co-conspirators in both counts; (3) violation of 18 U.S.C. § 933 is charged in both, though Count Two alleges that the defendants conspired to commit other underlying substantive offenses as well; (4) Count One does not expressly allege any overt acts, but the court liberally construes it (as discussed above) to incorporate by reference the overt acts alleged under Count Two; and (5) as alleged in Count Two, all of the events took place within the Middle District of Tennessee.

In addition, it seems clear that the elements of a conspiracy to violate § 933(a)(1) and the elements of a conspiracy under 18 U.S.C. § 371 to violate § 933(a)(1) are identical. *Accord United States v. Graham*, 275 F.3d 490, 519–20 (6th Cir. 2001) (finding no double jeopardy issue with an indictment charging a conspiracy under 18 U.S.C. § 371 and a conspiracy to violate §§ 841(a) and 846, in part because "none of the statutes which were named as objects of the § 371 conspiracy involved drug offenses"); *United States v. Arlt*, 252 F.3d 1032, 1034 (9th Cir. 2001) (expressly holding that, "when considering the elements of § 371, [courts] should treat the specific offense that a defendant is alleged to have conspired to commit as an element of that statute," meaning that "a defendant may be tried and convicted under both the general conspiracy statute [§ 371] and a specific conspiracy statute when the substantive offense that is charged as the object of the § 371 conspiracy and the substantive offense that is the object of the other charged conspiracy are different").

In the absence of any argument to the contrary by the government, the court finds that Count One of the Indictment is multiplicitous, insofar as it charges a § 933 conspiracy based (apparently) on the same conspiracy and a subset of the same predicate acts as the § 371 conspiracy charged in Count Two.

### E.  The Appropriate Remedy

Having determined that Count One is both duplicitous and multiplicitous, the court must determine what remedy to apply. The defendant broadly requests "reformation," and the government fails to acknowledge any problem with the Indictment so does not suggest a remedy.

The ban against duplicitous indictments is premised on their potential "adverse effects on a defendant," including "improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from a less than unanimous verdict as to each separate offense." *Duncan*, 850 F.2d at 1108 n.4. Multiplicitous indictments give rise to the risk that the defendant may be given multiple sentences for a single offense or give the impression that the defendant committed two crimes instead of one. *Id.*

While Rule 12 of the Federal Rules of Criminal Procedure generally requires defendants to move pretrial to challenge a defect based on duplicity or multiplicity, Fed. R. Crim. P. 12(b)(3)(B)(i)–(ii), it does not prescribe the remedy for these defects. However, the Sixth Circuit has recognized that "[t]he rules about multiplicity and duplicity are pleading rules, the violation of which is not fatal to an indictment." *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981). While a defendant may challenge a duplicitous or multiplicitous indictment by moving to require the government to "elect either the count or the charge within the count upon which it will rely," a duplicitous or multiplicitous indictment is also "remediable by the court's instruction to the jury particularizing the distinct offense charged in each count in the indictment," *id.*, and by

the use of "an augmented unanimity charge and special verdict forms," *United States v. McCafferty*, No. 1:10CR387, 2011 WL 933771, at *9 (N.D. Ohio Mar. 16, 2011). *See also Duncan*, 850 F.2d at 1108 n.4 ("Courts rejecting duplicity challenges to multiple-predicate counts . . . often premise their rulings on the condition that later augmented jury instructions will adequately protect the defendant against the risk of a nonunanimous verdict."); *Kakos*, 483 F.3d at 444 ("[P]roper jury instructions can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense." (citation omitted); *see also United States v. Starks*, 472 F.3d 466, 471 (7th Cir. 2006) (finding concerns about duplicitous indictment allayed by the jury's being "properly instructed . . . on the need to be in unanimous agreement" and by the use of a "special verdict form so that the record clearly reflects" jury unanimity); *United States v. Trammell*, 133 F.3d 1343, 1354–55 (10th Cir. 1998) (same, citing *Duncan*).

In other words, while Count One of the Indictment suffers from both multiplicity and duplicity, the defendants are now clearly on notice of the charges against them, and any risk of prejudice arising from duplicity at trial can be mitigated by carefully drafted jury instructions and a special verdict form. The risk posed by multiplicity can be eliminated at sentencing. While it would certainly be helpful—and would streamline trial considerably—if the government chose to dismiss the § 933(a)(2) (receipt of firearm by prohibited person)[9] and § 933(a)(3) (conspiracy) charges in Count One, the court will not at this juncture require that it do so.

---

[9] The court observes that the Indictment contains no facts suggesting that any defendant other than Marks might have violated § 933(a)(2), nor any facts suggesting that defendant Carver committed any substantive violation of § 933(a).

## III.    COUNT TWO

As set forth above, Count Two alleges a general conspiracy to commit a criminal offense against the United States, in violation of 18 U.S.C. § 371. Strukov identifies the criminal offenses that implicate him as (1) the alleged unlicensed sale of firearms, prohibited by 18 U.S.C. §§ 922(a)(1)(A) and 923, and (2) transferring firearms to a prohibited person, now a criminal offense under 18 U.S.C. § 933(a)(1). In other words, Strukov implicitly presumes that Count Two of the Indictment alleges (or attempts to allege) that he committed the substantive offenses of engaging in the unlicensed sale of firearms and the unlawful trafficking of firearms. The question posed, however, which neither party acknowledges, is whether Count Two adequately alleges Strukov's involvement in a conspiracy, the objective of which was the commission of those (and other) crimes—*not* whether Strukov himself committed the substantive crimes that were the alleged objective of the conspiracy.

### A.    Knowingly Joining the Conspiracy to Traffic in Firearms

Strukov objects to Count Two, first, on the grounds that it fails to allege facts that show that he knowingly joined the conspiracy to effectuate its purpose. More specifically, regarding the transfer of firearms to a prohibited person, he argues that this offense requires a "knowing" *mens rea*, but the Indictment fails to allege facts showing that he *knew* that Marks or the CI was a felon prohibited from possessing a firearm.

In *United States v. Conley*, 802 F. App'x 919 (6th Cir. 2020), the defendant was charged and convicted on two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). *Id* at 921. The indictment charging him with these offenses stated that the defendant, "having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce a firearm." *Id.* Likewise, the jury was instructed to find beyond a reasonable doubt that:

(1) "the defendant has been convicted of a crime punishable by imprisonment for more than one year"; (2) "the defendant, following his conviction, knowingly possessed a firearm"; and (3) "the specified firearm crossed a state line prior to the alleged possession."

*Id.* The defendant challenged the sufficiency of the indictment and the jury instructions post-conviction, citing *Rehaif v. United States*, 139 S. Ct. 2191 (2019), in which the Supreme Court held that, to prove a violation of 18 U.S.C. § 922(g), the government "must show that the defendant knew he possessed a firearm and also . . . knew he had the relevant [prohibited] status when he possessed it." *Rehaif*, 139 S. Ct. at 2194. In *Conley*, based on *Rehaif*, the Sixth Circuit rejected the government's argument that the indictment's use of the term "knowingly" applied both to the defendant's possession of the firearm and his knowledge of his prohibited status. It held that, although the indictment mirrored the language of the statute, it did not

> directly and unambiguously set forth the elements of the crime that the government must prove, *i.e.*, "both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." By including a knowledge component for the possession element, but not the status element, it suggests the opposite—that knowledge is required for possession, but not felony status.

*Conley*, 802 F. App'x at 923 (quoting *Rehaif*, 139 S. Ct. at 2200). The indictment was insufficient, insofar as it failed to "plead[] all the elements of the offense." *Id.* at 922.[10]

The difference between § 922(g) and § 933(a)(1), however, is that the "knowledge" requirement in § 922(g) is implied but not explicitly set out as an element of the crime in the statute, while § 933(a)(1) unambiguously makes it "unlawful for any person to . . . dispose of any

---

[10] Because the defendant in *Conley* waited until after trial to challenge the indictment, the court, applying plain-error review, concluded that, although the indictment was insufficient, the defendant was not prejudiced, because he was not hindered from preparing a defense, and he stipulated at trial that he had a prior felony conviction, which the court considered to be "strongly suggestive" of his knowledge of his felony status—particularly given that one of his prior convictions at the time of his stipulation was for being a felon in possession of a firearm. *Conley*, 802 F. App'x at 923.

firearm to another person . . . if such person *knows or has reasonable cause to believe* that the . . . possession of a firearm by the recipient would constitute a felony." 18 U.S.C. § 922(a)(1). Here, Count Two of the Indictment mirrors the language of the statute, including the language "knows or has reasonable cause to believe," as it states that the defendants conspired to engage in the transfer of firearms to another person "knowing or having reasonable cause to believe that the use, carrying, or possession of the firearm by the recipient would constitute a felony." (Doc. No. 3 ¶ 2(d).) The Indictment also charges Marks with knowingly being in possession of more than one firearm, while also knowing that he had previously been convicted of a felony. (*See, e.g.*, *id.* ¶ 9.) By charging Strukov with violating § 933 by knowingly transferring weapons to a prohibited person when he transferred weapons to Marks, with knowledge that Marks was transferring them to a third person, as set forth in the "Overt Acts" section of the Indictment, the Indictment adequately implies an allegation that Strukov knew or "ha[d] reasonable cause to believe" that Marks was a previously convicted felon and/or that the individual to whom Marks was conveying the firearms was a prohibited person. And the Indictment clearly places Strukov on notice that his knowledge of the recipient's status is an element of the crime that the government will have to prove. In other words, the language of Count Two, unlike that in the *Conley* indictment, both mirrors the language of the statute *and* "directly and unambiguously set[s] forth the elements of the crime that the government must prove." *Conley*, 802 F. App'x at 923. It is not insufficient for failing to expressly allege Strukov's knowledge of Marks' status as a prohibited person.

### B. Conspiracy to Deal Firearms

The defendant's objection to the sufficiency of Count Two with respect to his involvement in a conspiracy to deal in firearms, as prohibited by 18 U.S.C. § 922(a)(1)(A), is more confusing. He argues that the Indictment fails to allege facts showing that he "*knew* a license was required for these two sales yet proceeded with the transactions anyway." (Doc. No. 68, at 8.) He further argues

that the facts as alleged in support of Count Two "*affirmatively demonstrate* that his alleged conduct . . . was perfectly legal . . . and did not require a dealer's license" and, in any event, that the statutes under which he is charged are unconstitutionally vague and do not provide "fair warning that his conduct would be considered illegal." (*Id.* at 8, 9).

### 1.    Knowledge of License Requirement

Section 922, as relevant here, prohibits anyone not a licensed dealer from engaging in the "business of . . . dealing in firearms." 18 USC § 922(a)(1)(A). Strukov's argument that the Indictment does not allege that he knew a license was required for the two sales he made to Marks fails on the basis that, as stated above, the government does not have to prove that Strukov committed the substantive crime of dealing in firearms without a license; it has to prove his participation in a conspiracy to deal firearms without a license. Moreover, the Indictment adequately alleges facts sufficient to permit a finding that Strukov did engage in the substantive crime.

The *mens rea* for a violation of § 922(a)(1)(A) is not defined within that provision, but § 924(a)(1)(D) establishes that an individual must "willfully" violate § 922(a)(1)(A) to be criminally liable. *See also Bryan v. United States*, 524 U.S. 184, 189 (1998). The Court held in *Bryan* that this level of intent requires proof that the defendant knew his conduct was unlawful, not that he was specifically aware of the law or rule that prohibited his conduct. *Id.* at 196.

Here, the Indictment charges that the defendants, including Strukov, purchased firearms with the intent of reselling them to a CI and other individuals. (Doc. No. 3 ¶ 5.) Given this allegation, along with additional factual allegations in the Indictment and in the government's Response in opposition to Strukov's Motion to Dismiss regarding the number of weapons Strukov transferred to Marks and the number of weapons found during a search of Strukov's residence, a jury could find that Strukov's conduct was unlawful. *Accord United States v. Gray*, 470 F. App'x

468, 473 (6th Cir 2012) (finding the evidence sufficient to support a § 922(a)(1)(A) conviction despite the defendant's contention that the government only proved that he sold two guns shortly after he purchased them, as "the statute does not establish a minimum threshold for the number of guns sold," and the defendant's sale of "only two or three with a short turnaround was enough evidence for the jury to conclude that he had a profit motive in his gun sales").

In addition, given the manner in which the transactions took place, involving repeat sales facilitated by Fakhry with Marks as an intermediary, a jury could find that Strukov knew the sales they conducted were unlawful. *Accord id.* ("[T]here is no requirement that a defendant be warned that his conduct is unlawful.). The Indictment adequately alleges facts supporting willfulness, and it will be for the jury to determine whether the government has met its burden of proof.

### 2. *Constitutionality of § 922*

Strukov argues that § 922(a)(1)(A) is unconstitutionally vague and that it failed to provide him "fair warning that his conduct would be considered illegal." (Doc. No. 69, at 9.)

#### a) *Void-for-vagueness Challenge*

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Beckles v. United States*, 580 U.S. 256, 262 (2017) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). However, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (quoting *Vill. of Hoffman Ests.v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)).

Again, as relevant here, Section 922 makes it unlawful for "any person" who is not a "licensed dealer . . . to engage in the business of . . . dealing in firearms." 18 USC § 922(a)(1)(A).

The term "dealer" is defined for purposes of § 922(a)(1)(A) to mean "any person engaged in the business of selling firearms at wholesale or retail." 18 U.S.C. § 921(a)(11)(A). And a person "[e]ngaged in the business" means, for purposes of § 921(a)(11)(A), "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms." *Id.* § 921(a)(21)(C). A person "[e]ngaged in the business" is expressly defined to exclude "a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." *Id.* And the term "predominantly earn a profit" means "that the intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection." *Id.* § 921(a)(22). The Sixth Circuit has recognized that "a defendant need not deal in firearms as his primary business for conviction." *Gray*, 470 F. App'x at 472 (citing *United States v. Manthey*, 92 F. App'x 291, 297 (6th Cir. 2004)).

Courts considering challenges to § 922(a)(1)(A) have concluded that the statute is not unconstitutionally vague as applied to specific conduct. *See, e.g.*, *United States v. Alexander*, 834 F. App'x 312, 316 (9th Cir. 2020) (finding the statute "sufficiently clear to give Defendants notice that their [conduct] fell within its proscription," noting in particular that the "use of terms such as 'business' and 'dealing' are 'well defined in the law'" and that the definition of "engaged in the business" at § 921(a)(21)(C), enacted more recently, only added clarity to the law (citations omitted)); *United States v. Hosford*, 843 F3d 161, 166 (4th Cir. 2016) (same); *see id.* at 171 ("[W]here, as here, the statute clearly gave notice to Hosford that he ought not to regularly sell firearms that he only purchased and resold for profit—firearms not acquired for the purpose of a personal collection or for the hobby of collecting firearms—his as-applied vagueness challenge

fails."); *United States v. Dettra*, 238 F.3d 424 (Table), 2000 WL 1872046, at *3 (6th Cir. Dec. 15, 2000) (rejecting void-for-vagueness challenge where "[t]he statute clearly applied to the defendant's conduct" and "the defendant was aware that his conduct was unlawful").

The government asserts that the evidence it expects to present will support a conclusion that Strukov was engaged in conduct that was clearly illegal and falls within the purview of the statute. The court finds that the question of whether the statute is unconstitutional as applied to *Strukov* is premature, insofar as that determination will largely depend on the facts the government is able to establish at trial. The Indictment itself charges the defendants generally with engaging in a conspiracy to buy firearms for the purpose of reselling them (Doc. No. 3 ¶ 5) and alleges that Strukov personally sold a total of at least nine such firearms within a short period of time (*id.* ¶¶ 8(DD), 8(LL)–OO)). Strukov will remain free to argue at trial that the evidence shows only that he engaged in "occasional sales" in furtherance of a hobby or for the purpose of liquidating "part of his personal collection of firearms." *Id.* But he has not shown that the statute is void for vagueness as applied to him.

b)     *Fair Warning*

Strukov also argues that § 922(a)(1)(A) does not give fair warning of prohibited conduct and therefore violates his Fifth Amendment due process rights. "[O]ne of the basic tenets of due process jurisprudence is that citizens be afforded fair notice of precisely what conduct is prohibited." *United States v. Anderson*, 605 F.3d 404, 412–13 (6th Cir. 2010) (quoting *United States v. Blaszak*, 349 F.3d 881, 885 (6th Cir. 2003). Generally, citizens "may be presumed to know the content of the law so long as the relevant statute is not 'so technical or obscure that it threatens to ensnare individuals engaged in apparently innocent conduct.'" *Id.* at 412 (quoting *United States v. Baker*, 197 F.3d 211, 219 (6th Cir. 1999)). The fair-warning analysis overlaps

substantially with the void-for-vagueness analysis. As the Sixth Circuit has explained, courts faced with a "fair warning" challenge typically consider three issues:

> First, we must determine whether the statute "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Next, we apply the cannon of strict construction, or the rule of lenity, which requires fair warning of the prohibited conduct and under which we must resolve any ambiguity in a criminal statute by applying it only to the conduct clearly described in the statute. Finally, due process does not permit application of a novel construction of a criminal statute "to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." The "touchstone" behind all of these concerns is an examination of the statute to determine whether, either on its face or as construed, the provision in question "made it reasonably clear at the relevant time that the defendant's conduct was criminal."

*Blaszak*, 349 F.3d at 886 (quoting *United States v. Lanier*, 520 U.S. 259, 266, 267 (1997)).

> The defendant argues that the statute here

> would lead an ordinary person of "common intelligence" to conclude that the sale of a handful of firearms on two occasions from his personal collection was perfectly acceptable as a hobby not requiring a dealers license. To the extent that the same statute reasonably appearing to *authorize* Mr. Strukov's alleged conduct could be argued to *prohibit* it, ambiguity exists and should be resolved in Mr. Strukov's favor under the well-established doctrine of lenity.

(Doc. No. 69, at 11 (footnotes omitted).)

The court is not persuaded. Strukov has not pointed to any caselaw suggesting that § 922(a)(1)(A) fails to provide fair warning or that its language is so "highly technical" that it "threaten[s] to ensnare individuals engaged in apparently innocent conduct." *Bryan*, 524 U.S. at 194. Moreover, a statute is not unconstitutionally vague when it is "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973). The statute at issue here defines the prohibition against unlicensed firearm dealing in clear and narrow terms: "it regulates only individuals who regularly sell, for the principal purpose of accruing profit or maintaining a livelihood, firearms that are not part of their personal collection or for their

hobby." *Hosford*, 843 F.3d at 170. If, as the defendant claims, he was merely selling a "handful of firearms on two occasions from his personal collection," such conduct would not be illegal under § 921(a)(21)(C), and the jury will be instructed in that regard. The burden remains on the government to prove that the sales at issue fell outside that exception.

Insofar as Strukov argues that the statute is unclear as to where to draw the line between a "dealer" and a "collector" or between a person selling guns for profit as opposed to a hobby, such ambiguity is not necessarily fatal. As the Fourth Circuit recognized in *Hosford*:

> [All] statutes necessarily have some ambiguity, as no standard can be distilled to a purely objective, completely predictable standard. "[T]he law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree." And where, as here, the statute clearly gave notice to [the defendant] that he ought not to regularly sell firearms that he only purchased and resold for profit—firearms not acquired for the purpose of a personal collection or for the hobby of collecting firearms—his as-applied vagueness challenge fails.

*Id.* at 171 (quoting *Johnson v. United States*, 576 U.S. 591, 604 (2015)).

Again, and more to the point, Strukov himself is not charged with the substantive offense of dealing firearms without a license. He is, instead, charged with involvement in a conspiracy to sell firearms without a license. What the government appears to intend to prove is that Marks was engaged in dealing firearms without a license and that Strukov knowingly conspired with Marks to deal in firearms when he passed firearms along to Marks for Marks to distribute to third parties. The government is not required to prove that Strukov was willfully dealing firearms without a license.

Regardless, the defendant's challenges to the constitutionality of § 922 are, in effect, fact-based challenges. While it remains to be seen whether the government can prove Strukov's involvement in the charged conspiracy, Strukov has not shown that Count Two of the Indictment is insufficiently pleaded or that the substantive crimes that are the target of the conspiracy are

either void for vagueness as applied or that they fail to provide adequate notice of what conduct is prohibited.

## IV. CONCLUSION

For the reasons set forth herein, defendant Strukov's Motion to Dismiss or Cure Indictment (Doc. No. 68) will be denied, but without prejudice to the defendant's ability to request special jury instructions and a carefully tailored verdict form to address the problems of duplicity and multiplicity identified herein.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge